[Civil No. 1957.   Filed June 28, 1922.]

[207 Pac. 875.]

## S. A. GARDANIER, IGNACIO SOTO and F. J. B. GONZALES, Copartners in Business Under the Firm Name and Style of INTERNATIONAL COMMISSION COMPANY, Substituted in an Action Pending for MELCHER SUCS., Appellants, v. JUAN CELADA, Appellee.

WAR — ALIEN ENEMY HELD TO HAVE PERSONA STANDI IN JUDICIO AFTER ISSUANCE OF FEDERAL LICENSE TO TRADE WITH ENEMY.— In an action on protested check drawn after issuance by federal government of license to trade with the enemy, *held*, that the Trading With the Enemy Act (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann., Supp. 1919, §§ 3115½a–3115½j; Fed. Stats. Ann., 1918 Supp., p. 846, 1919 Supp., p. 355), no longer applied, and that alien enemies had a legal right to maintain the action, notwithstanding that the government was still technically at war with the government of plaintiff's allegiance.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz.   W. A. O'Connor, Judge.   Reversed and remanded.

Messrs. Duffy & Purdum and Mr. R. Wm. Kramer, for Appellants.

Mr. Frank J. Barry, for Appellee.

McALISTER, J.—This action was instituted in the superior court of Santa Cruz county, this state, to recover from J. Celada, defendant-appellee, $6,130, the amount of a check dated August 2, 1919, and drawn by him on the First National Bank of Nogales, Arizona, in favor of Octavio Gaxiola.   F. Unger and G. B. Burmister, residents of Mazatlan, Sinaloa, Mex-

On right of resident alien who is a subject of an enemy country to prosecute suit during war, see notes in **Ann. Cas.** 1918E, 347; **3 A. L. R.** 341.

ico, copartners doing business there under the firm
name and style of Melcher Sucs., were. the original
plaintiffs, but after the suit was filed, to wit, on Janu-
ary 24, 1921, S. A. Gardanier, Ignacio Soto, and
F. J. B. Gonzales, composing a copartnership known
as the International Commission Company, were sub-
stituted for them, upon motion of Unger and Burmis-
ter, the check having been indorsed to them on No-
vember 29, 1920, by Melcher Sucs., who were at the
time of the filing of the action its owners and holders,
having become such in the due course of business
through the successive indorsements of Gaxiola· and
one Eduardo Amarillas. In their complaint Unger
and Burmister`alleged that the bank refused to pay
the check when it was presented for that purpose on
or about August 10, 1919, because the drawer did not
have to his credit sufficient funds to meet it.

The defense, raised both by plea in abatement and
by answer, is that during all the times mentioned in
plaintiffs' complaint the United States and the Ger-
man Empire were at war with each other, and that
F. Unger and G. B. Burmister, from the date the
check was transferred to them through indorsement
up to the day of the trial, were citizens and subjects
of the German Empire and alien enemies of the
United States abiding outside its territory; that prior
to the commencement of the action and continuing up
to the day of the trial they were listed by the govern-
ment of the United States in the Enemy Trading List
of the War Trade Board of the United States; and
that the indorsement and transfer of the check were
made by them during the pendency of the war be-
tween the United States and Germany and was an
attempted contract by an alien enemy of the United
States, and therefore void.

A demurrer to the plea in abatement was inter-
posed and overruled, whereupon testimony in sub-

stantiation of the plea was introduced, and upon this the court made the following finding of fact:

"That at the time of filing of the complaint by Melcher Sucs., the original plaintiffs in said action, said Melcher Sucs. were, and are now, German subjects and alien enemies of the United States of America; that subsequent to the commencement of said action said Melcher Sucs. transferred and assigned their interest in the subject matter of said action to the present plaintiffs herein, who on motion of counsel for said Melcher Sucs. were substituted for said Melcher Sucs. in said action."

From this the court concluded as a matter of law that at the time the complaint was filed the plaintiffs F. Unger and G. B. Burmister had no standing in the courts of the United States, and that their successors in interest or indorsees, the present plaintiffs, acquired from them and had no greater rights than they. Thereupon the plea in abatement was sustained and the action dismissed. The assignments are based on these two orders, but it is necessary to discuss only the one sustaining the plea in abatement, for a correct disposition of it is decisive of the case.

Under date of October 6, 1917, the Congress of the United States passed an act entitled "Trading With the Enemy Act" (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann., Supp. 1919, §§ 3115½a–3115½j; Fed. Stats. Ann., 1918 Supp., p. 846, 1919 Supp., p. 355), which defined as an "enemy," among others, the following:

"(a) Any individual . . . of any nationality, resident within the territory . . . of any nation . . . with which the United States is at war, or resident outside the United States and doing business within such territory. . . .

"(c) Such other individuals . . . as may be natives, citizens, or subjects of any nation . . . with which the United States is at war, . . . wherever resident or wherever doing business, as the President, if he shall find the safety of the United States or the

successful prosecution of the war shall so require, may, by proclamation, include within the term . . . 'enemy.' ''

On May 31, 1918, the President of the United States found that the safety of the United States and the successful prosecution of the war required that certain other persons be included ''within the meaning of the word 'enemy' for the purposes of the 'Trading With the Enemy Act' and of such trading,'' and issued a proclamation designating, among others, the following as enemies:

'' (4) Such other individuals or body or class of individuals as may be citizens or subjects of any nation with which the United States is at war wherever resident outside of the United States, or wherever doing business outside of the United States, who are or may hereafter be included in a publication issued by the War Trade Board of the United States of America, entitled 'Enemy Trading List.' '' 40 Stat. 1787.

The evidence discloses that Melcher Sucs., the co-partnership composed of F. Unger and G. B. Burmister, the original plaintiffs in this case, were, in pursuance of the authority conferred by the foregoing proclamation, placed on the Enemy Trading List by the War Trade Board of the United States, but that on April 28, 1919, acting concurrently with the proper authorities of the associated governments, the War Trade Board abolished all Enemy Trading Lists compiled or issued by it except as they referred to subjects of Germany or Hungary. But on July 14, 1919, the Department of State, to which the President had by proclamation granted this power, issued, through the Chief of its War Trade Board Section, in the following language, a general license to trade with the enemy:

''Pursuant to the power vested in the President of the United States under section 5 (a) of the Trading with the Enemy Act and by the President delegated to the Department of State, the Department of State,

acting through the War Trade Board Section, hereby issues a general enemy trade license to all persons in the United States, authorizing said persons, for all purposes connected with the provisions of sections 3 (a) and 3 (c) of the Trading with the Enemy Act, on and after July 14, 1919, to trade and communicate, as defined in sections 2 and 3 (c) of said act with persons residing in Germany, and to trade and communicate with all persons with whom trade and communication is prohibited by the Trading with the Enemy Act.''

It will be observed that the license contained in the foregoing and issued before this case was instituted or the check in question dated, drawn or transferred to Melcher Sucs. authorizes the people of the United States to trade or communicate with persons residing in Germany as well as with all persons with whom trade and communication had theretofore been prohibited by the Trading With the Enemy Act. The authority thus conferred enabled them to do, after July 14, 1919, what they had been denied the right to do previous thereto, and carried with it the right to enforce in court any contract entered into or obligation incurred as a result of any business transactions consummated in pursuance thereof.

''If the contract on which the suit is brought,'' says Justice WASHINGTON in *Crawford* v. *The William Penn,* Fed. Case No. 3372, ''arises directly or collaterally out of a trade licensed by the sovereign authority of the government in whose courts redress is sought, enemy interest in the subject in controversy will not defeat the action depending in the name of the subject as trustee. . . . The end being licensed, the ordinary legitimate means of attaining that end is considered as being also licensed. . . . Where commerce is permitted amongst enemies, contracts and actions founded upon them are permitted; 'for who,' [Bynkershoek] asks, 'will sell and carry goods to an enemy, without the right of recovering the price of them, and what hope can there be of recovering that price, if one cannot judicially compel payment from his enemy purchaser.' In cases of this nature, in courts proceeding according to the civil law, the only

question is: Has the plaintiff a *persona standi in
judicio?* Can he be heard as a plaintiff in that court?
Bynkershoek, in the above quotation, gives the an-
swer. The right to sue and to compel payment is a
necessary incident to his right to trade and to con-
tract.''

It is appellee's contention, however, that inasmuch
as Unger and Burmister were German subjects, and
the United States was still at war with Germany when
the check was presented for payment and this action
instituted, the application of the common-law rule pro-
hibiting an alien enemy from suing in the courts of
the country with which his own country is at war
compels a dismissal of the action. But the Trading
with the Enemy Act defines enemies for the purpose
of trade and fixed their status, and its provisions on
that subject are exclusive and controlling, since it was
clearly within the power of Congress to do this, and,
if this act had the effect of modifying the common law
in any particular, the latter would necessarily give
way. So, whether Unger and Burmister, German
subjects residing in Mexico, were alien enemies within
the meaning of the common law, or whether they came
within the exception to that rule which permits an
alien enemy residing in the country or who may come
into it by license of its sovereign to maintain an ac-
tion, is immaterial, since the license ''to trade and
communicate with all persons with whom trade and
communication is prohibited by the Trading With the
Enemy Act,'' issued in conformity with and in pur-
suance of this act, had the effect of giving them the
right to sue in the courts of this country and of set-
ting aside by implication any rule of the common law
which may have denied them such right, for the act of
Congress must unquestionably govern the matter.
The fact that the general license to trade was issued
during the existence of only a technical state of war
months after victory had been won and actual hostil-
ities ceased, when the reason for the rule denying

enemies the right to sue in the courts of this country no longer applied, would indicate that it was the intention of the government that the business of the country should not be further hampered by such restrictions.

The order sustaining the plea in abatement upon the ground that the original plaintiffs were alien enemies, and therefore without status in the courts of the country, at the time the action was filed, as well as that dismissing the action, was error.

The judgment is reversed, and the case remanded for further proceedings in conformity with the views herein expressed.

ROSS, C. J., and FLANIGAN, J., concur.